# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SPRING POINT CONDOMINIUM ASSOCIATION, | ) ) No. 17 CV 2065 |
| Plaintiff, | ) ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| QBE INSURANCE CORPORATION, | ) ) |
| Defendant. | ) December 13, 2017 ) |

## MEMORANDUM OPINION and ORDER

Before the court is Plaintiff Spring Point Condominium Association's ("Spring Point") motion to compel Defendant QBE Insurance Corporation ("QBE") to submit the parties' insurance dispute to an appraisal. For the following reasons, the motion is granted:

## Background

On July 17, 2015, a severe hail storm caused significant damage to Spring Point's property in Carpentersville, Illinois. (R. 30, Pl.'s Mot. at 1.) Spring Point had maintained an insurance policy ("the Policy") with QBE since 2008, and on November 23, 2015, it submitted a claim to QBE in connection with the storm damage. (R. 34, Def.'s Resp. at 2.) QBE retained Hagg Engineering ("Hagg") to inspect the property. (Id.) In its inspection report, Hagg opined that hail damage to the property's siding, fascia trim, gutters, and downspouts occurred prior to 1999. (Id., Ex. B.) Subsequently, on February 19, 2016, a wind storm caused damage to Spring Point's property. (R. 30, Pl.'s Mot. at 1.) On April 19, 2016, Spring Point

informed QBE of damage to its property resulting from the storm, and QBE again retained Haag to inspect the property. (R. 34, Def.'s Resp. at 3.) In its inspection report, Hagg "documented three locations where siding and trim were missing or loosened" and opined that Spring Point sustained minimal damage in connection with the wind storm. (Id., Ex. C.) Based on Hagg's damage estimate, QBE has offered to pay Spring Point $37,898.33, but denies responsibility for any damage to Spring Point's property that it says occurred prior to the inception of the Policy. (R. 30, Pl.'s Mot. at 2.)

In January 2017 Spring Point retained Inside-Out Construction Services ("Inside-Out") to evaluate the extent of the damage caused by the July 17, 2015 and February 19, 2016 storms. (R. 30, Pl.'s Mot., Ex. B.) Inside-Out opined that Spring Point sustained $3,106,515.28 in damages in connection with the two storms. (Id.) On March 17, 2016, Spring Point made a written demand for an appraisal of its loss to QBE, but QBE refused to submit the matter to appraisal. (R. 1, Compl. at 3.)

On September 19, 2017, Spring Point filed the present motion to compel an appraisal. In its motion, Spring Point argues that because the parties dispute the value and amount of loss caused by the storms, it is entitled to an independent appraisal to assess the value and amount of loss as required under the Policy. (R. 30, Pl.'s Mot. at 1.) The relevant provision of the Policy reads:

> 1. If you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss. In this event, each party will do the following:
>
> a. Select its own appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.

2

> (1) The appraisers will state separately and independently the amount of the loss or damage.
> (2) If the two appraisers fail to agree they will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.
> (3) An agreement by any two will be binding as to the amount of the loss.

(R. 1, Compl., Ex. A at 16-17.) In response, QBE argues that Spring Point's motion should be denied because the dispute in this case amounts to a coverage issue, which is a question to be resolved by the court, and not a disagreement about the valuation of damages that would necessitate the enforcement of the Policy's appraisal clause. (R. 34, Def.'s Resp. at 2.)

## Analysis

When determining whether to apply a particular clause of a contract, a court's primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. *Berg v. New York Life Ins. Co.*, 831 F.3d 426, 428 (7th Cir. 2016); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the words used in the insurance policy are plain and unambiguous, the words should be accorded their plain and ordinary meaning. *Berg*, 831 F.3d at 429; *State Farm Mut. Auto. Ins. Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998). When deciding whether a provision is ambiguous, the court "read[s] the policy in light of 'the insured's reasonable expectation and the policy's intended coverage.'" *Berg*, 813 F.3d at 429 (quoting *Gen. Star Indemn. Co. v. Lake Bluff Sch. Dist. No. 65*, 354 Ill. App. 3d 118, 127 (2004)). Courts have held that an appraisal clause is analogous to an arbitration clause, "which is enforceable in a court of law,

3

and with which a court may compel compliance." *Lundy v. Farmers Grp., Inc.*, 322 Ill. App. 3d 214, 218 (2001).

The court finds that the dispute here is ripe for appraisal as the parties disagree on the amount of loss sustained during the July 17, 2015 and February 19, 2016 storms. Spring Point values its loss at over $3 million while QBE estimates the loss to be approximately $40,000. The considerable disparity in valuation is based largely on QBE's belief that certain damage to Spring Point's property occurred before the Policy period. The plain and unambiguous language of the Policy states "[i]f you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss . . . [t]he appraisers will state separately and independently the amount of the 'loss or damage.'" (R. 1, Compl., Ex. A at 16-17.) Here, the parties disagree on when certain damage to Spring Point's property was sustained; therefore, the amount of loss caused by the storms remains in dispute. According to the terms of the Policy, Spring Point is entitled to submit this dispute to an appraiser to determine the extent of damage caused by the two storms.

Courts in this district have repeatedly held that questions relating to the cause of damage are appropriate for appraisal. In *201 N. Wells, Inc. v. Fidelity and Guaranty Ins. Co.*, No. 00 CV 3855 (N.D. Ill. Jan. 24, 2001), the parties disputed the amount of loss sustained after a water valve malfunctioned. The contract between the parties included an appraisal clause identical to the clause at issue in this case. The insurer argued that an appraisal was not appropriate because the parties were

not disputing the value of the property or the amount of loss, but the *causes* of the loss. No. 00 CV 3855, Dkt. No. 32 at 2. The court rejected the insurer's argument and held that:

> [D]etermining the cause of the damage is inherent to the appraiser's duties. For example, if a building has damage before a covered event occurred, the appraiser cannot determine the amount of loss without evaluating what damage was caused by the covered event and which damage was caused, for instance, by previous wear and tear.

*Id.*

Courts in this district have also rejected insurers' previous efforts to frame causation disputes as coverage issues as QBE attempts to do in this case. In *Philadelphia Indemnity. Ins. Co. v. Northstar Condominium Ass'n*, No. 15 CV 10798 (N.D. Ill. Oct. 18, 2016), and *Runaway Bay Condominium Ass'n v. Philadelphia Indemnity Ins. Co.*, No. 16 CV 9551, 2017 WL 1478114 (N.D. Ill. April 25, 2017), the parties disagreed on the extent of property damage caused by recent storms. As in this case, the condominium associations contended the disagreement triggered their policy's appraisal clause, but the insurers argued that the issue was one of coverage to be addressed by a court. *Northstar*, No. 15 CV 10798, Dkt. No. 34; *Runaway Bay*, 2017 WL 1478114, at *1. The insurers maintained that questions regarding what caused the property damage were not appropriate for an appraiser as the appraisal process is limited to determining the value of an insured's loss. The *Northstar* court rejected the insurer's argument and held that "whether other damage was already present or occurred after the April 2014 storm are factors for the appraiser to take into consideration when making his assessment." *Northstar*, No. 15 CV 10798, Dkt.

5

No. 34 at 5. The *Runaway Bay* court stated that the insurer's argument "assumes the task of determining the value of the damage can be meaningfully separated from the task of determining what caused the damage," and noted the insurer's failure to explain "how this bifurcation might be achieved as a practical matter." *Runaway Bay*, 2017 WL 1478114 at *2. The court ultimately rejected the argument and concluded that "questions concerning the cause of the damage . . . are appropriate for appraisal." *Id.* Following the reasoning in *201 N. Wells*, *Northstar*, and *Runaway Bay*, this court concludes that whether and to what extent Spring Point's loss was actually caused by the two storms is appropriately determined by appraisal.

The court also rejects QBE's reliance on *FTI International, Inc. v. Cincinnati Ins. Co.*, 339 Ill. App. 3d 258, 790 (2003), *Lytle v. Country Mutual Ins. Co.*, 2015 IL App (1st) 142169, and *Lundy v. Farmers Group, Inc.*, 322 Ill. App. 3d 214 (2001), in an effort to argue that the instant dispute is appropriately resolved by the court because, unlike here, those cases involved questions of law. *See FTI*, 339 Ill. App. 3d at 261 (holding that a dispute regarding whether the insured was entitled to the replacement cost or the sales price of the damaged property required the application of principles of contractual interpretation); *Lytle*, 2015 IL App (1st) 142169, ¶ 27 (holding that a dispute regarding whether certain costs associated with complying with building ordinances were covered under the homeowner's policy is a question of contract interpretation); *Lundy*, 322 Ill. App. 3d at 219 (holding that a dispute regarding whether the insurer misrepresented the quality of

6

repair parts covered under its policies required an interpretation of the policy language). In contrast, the instant case does not turn on the court engaging in contractual interpretation because QBE is not contending that the terms of the appraisal clause are ambiguous or taking issue with the Policy period or terms. Instead, this case turns on the amount of loss, which is governed by the Policy's appraisal clause.

## Conclusion

For the foregoing reasons, Spring Point's motion to compel appraisal is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**